# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| ANN SHIELDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| vs. ) | No. 10-3174-CV-S-JCE-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **O R D E R**

Plaintiff is appealing the final decision of the Secretary denying her application for disability benefits under Title II of the Act, 42 U.S.C. § 401 et seq. Pursuant to 42 U.S.C. § 405(g), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be affirmed.[1]

### Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g). See Travis v. Astrue, 477 F.3d 1037, 1040 (8th Cir. 2007). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." Nicola v. Astrue, 480 F.3d 885, 886 (8th Cir. 2007). The Court will uphold the denial of benefits so long as the ALJ's

---

[1]According to plaintiff's counsel, she filed a subsequent application for benefits, and a fully favorable decision was issued by a different ALJ on December 22, 2009, indicating that her disability began on July 24, 2008, one day after the decision in this case.

1

decision falls within the available "zone of choice." See Casey v. Astrue, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. (quoting Nicola, 480 F.3d at 886).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well-settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the

relevant evidence on the Polaski factors and may not discredit subjective complaints unless they are inconsistent with the evidence in the record as a whole. Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

## Discussion

Plaintiff was 62 years old at the time of the hearing before the ALJ. She has a high school diploma and three years of college. In her application for benefits, she alleged disability based on fibromyalgia and osteopenia. She complained of pain, stiffness, limited mobility, and dizziness and blurry vision from her medication. Her application also indicates that she quit working on May 21, 2004, because her daughter moved back to Missouri and she quit her job to come back and be with her.

At the hearing before the ALJ, plaintiff testified that she is alleging disability as of May 21, 2004. It was her testimony that she had had a lot of panic attacks in the past, and a lot of pain in her neck and hip. She stated that she started having panic attacks in 2002 or 2003, and that she would have them all day at work to the point that she could no longer do her job. It was her testimony that she would get dizzy, and everything would be in a black cloud. This would last about a minute to a minute and a half. She had them at home, at work, at church, and everywhere she went, and she did not know what brought them on. She had panic attacks about five or six times a day. As far as her ability to do her job, she testified that she wouldn't be able to see the keyboard and would just be "kind of out of it for a minute or so." [Tr. 22]. She also had pain in her right hip, shoulder, and knee, which worsened in 2004. Because of this, she had to slow down on the keyboard because of pain in her arm and her neck. She couldn't get comfortable, and she could not sit for very long. She went to work every day, but it got to the

point that she wasn't doing her job.  She still has pain in her neck, right shoulder, and right arm. About ten percent of the time, the pain goes down into her right arm. Doing housework, such as dishes, aggravates the pain.  She can use her arm about five minutes before she has to stop because of sharp pain in the back of her neck and down over her shoulder.  Her fingers are swollen and painful when she moves them.   She also has pain in her lower back 100 percent of the time; sitting and standing make it worse, and she can only stand or sit a couple or three minutes before she has to change positions.  She has pain in her right leg down to her knee, which causes stiffening pain, dull aches, and sometimes sharp pains.  Plaintiff testified that she also has a dull ache in her ankles and feet.  Some medication takes the edge off the pain, but also makes her very sleepy to the point that she can't drive.  She has to lie down because of pain.  Two or three times a week, she has to lie down two to three times a day.  It was her testimony that she is at about 50 percent of her former speed.  Regarding her depression and anxiety, plaintiff stated that, in addition to the dizzy spells, she just doesn't want to go anywhere. When she is in the grocery store, she has to get a cart, just in case she feels like she is going to black out. She has no issues with irritability or anger.  She does have problems with concentration. She also testified that she has an irritable bowel, which her doctor told her is due to the fibromyalgia.  It was plaintiff's testimony that her doctor only prescribes pain medication and antidepressants for her.  She testified that she could stand or walk or sit for about 20 minutes of an eight-hour workday.  She can lift less than 10 pounds on a daily basis.  In terms of daily activities, plaintiff testified that she can do laundry, help straighten things up, do a little cleaning, make the bed, drive, and go to the grocery store, Wal-Mart, and church.

      The ALJ found that plaintiff has not engaged in substantial gainful activity since May

21, 2004, the alleged onset date. He further found that the medical evidence established that plaintiff suffers from fibromyalgia syndrome, mild degenerative disc disease of the lumbar spine, and mild arthritis in both hips, which he found to be severe impairments. The ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. It was the ALJ's finding that plaintiff was only partially credible. He found that plaintiff has the residual functional capacity ["RFC"] to perform the full range of medium work. It was the finding of the ALJ that plaintiff did not have past relevant work that constituted substantial gainful employment, but that there were jobs she could perform in the national economy, and that she is not under a disability as defined by the Act.

The ALJ posed the following hypothetical to a vocational expert: an individual who "could perform medium work with mild pain. That would include the ability to stand or walk six hours out of eight hours, sit six hours out of eight hours. She would be mildly limited for understanding and remembering tasks for sustaining concentration and persistence, social interacting with the general public, and adapting to work place changes. . . ." [Tr. 32]. The vocational expert testified that there would be entry-level unskilled work an individual could perform, including janitor, packager, and assembler. In terms of light jobs, such an individual could perform jobs as a cleaner and packager.

The issues raised by the plaintiff in this case are that the ALJ erred by failing to properly assess plaintiff's RFC because he did so without the aid of any medical opinion, failed to properly assess work-related functions, improperly interpreted medical evidence, and failed to provide a logical bridge linking the RFC to the evidence of record. Plaintiff also contends that the ALJ failed to fully develop the record, including failing to obtain a medical opinion

5

regarding her functional capacities, and failing to resolve ambiguities regarding her mental impairments. It is also her contention that the ALJ failed to consider plaintiff's obesity, her arthritis, anxiety, depression, and memory loss as severe impairments.

A review of the record indicates that plaintiff sought treatment from Dr. Samuel Newton in April of 2005 for achiness in her arms, legs, and shoulders. She was prescribed Naprosyn and Soma. Continued complaints of pain led to a diagnosis of arthritis. Dr. Newton then added fatigue to his diagnoses, and after noting tenderness and decreased range of motion, he referred her to a rheumatologist.

The ALJ relied in large part on the treatment records by the rheumatologist, Dr. Sakr, whom plaintiff began seeing in October, 2005, with complaints of general achiness, depression, anxiety, fatigue and poor sleep. After an examination, he found that there was no evidence of inflammatory arthritis, but diagnosed plaintiff with fibromyalgia and degenerative joint disease in the right hip. He noted, through a physical examination, that she had diffusely tender peripheral joints, but with no swelling, mild pain restrictions in her shoulders and her right hip, and fair range of motion in all other joints. The doctor found that she had 18 out of 18 fibromyalgia tender points. The neurological examination showed normal motor strength, sensation and reflexes, and negative straight leg raising. Dr. Sakr prescribed pain medication as well as an anti-depressant. In January of 2006, the next time plaintiff saw the rheumatologist, she reported that her back pain was better, but that she was still depressed, so the doctor prescribed an additional anti-depressant. An MRI of the pelvis in April of 2006 was normal. An MRI of the lumbar spine that same month showed some early degenerative disc disease, and a small amount of protruding disc, but no marked stenosis or involvement of a nerve root. When

plaintiff saw Dr. Sakr for a follow-up on April 18, 2006, she complained of low back pain and hip pain; he noted that she had slightly painful rotation of both hips. Plaintiff saw him again in November, at which time she stated that she was doing well, sleeping better, and had less aches and back pain.  When she saw him in 2007, she had no complaints, and the doctor indicated that she had no swelling, synovitis, or tender points.  It was his observation that her fibromyalgia syndrome was doing well on her current treatment regimen.  Her next visit was in March of 2008; he again noted that she was doing well and had no synovitis, swelling or tender points.

Based on a careful review of the medical records, the ALJ concluded that: within approximately one year of treatment with a rheumatologist, plaintiff had significant improvement in her fibromyalgia syndrome; that by 2007 she was asymptomatic; that there was no evidence of motor strength, sensory or reflex abnormalities of the upper or lower extremities; and that the doctor's treatment records did not show that she had difficulty using her hands, legs, arms, or feet.  He also noted that the cervical spine x-rays were negative, and the lumbar spine MRI showed mild findings.  It was also his conclusion that the arthritis of her hips was mild, based on x-ray findings.

In reaching his decision, the ALJ examined the medical records, including plaintiff's laboratory tests in 2005.  Her CT bone density study of the lumbar spine showed osteopenia; x-rays of the cervical spine were normal; x-rays of the hips showed minimal findings; x-rays of the lumbar spine showed some spondylosis; and a laboratory report showed normal sedimentation rate and negative rheumatoid factor.  After reviewing the entire medical record, the ALJ found that plaintiff's fibromyalgia had responded well to treatment.  Plaintiff was treated in 2005 and early 2006 by the rheumatologist.  Thereafter, she only saw the physician once or twice in 2007

7

and only once in 2008. The doctor noted on these occasions that she was doing well, and continued her on medication.

After careful review, the Court finds that the ALJ's determination that plaintiff's fibromyalgia had improved with successful treatment and that the condition was controlled with medication is supported by substantial evidence. Such a determination precludes a finding of disability. See Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010) (noting that, "'[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling'" (quoting Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009)). The law is clear that, despite a diagnosis of fibromyalgia or fibromyalgia syndrome, a claimant is not necessarily disabled, based on other diagnostic tests and physical examinations, which were present in this case, as well as responsiveness to treatment. See, e.g., Hamilton v. Astrue, 518 F.3d 607 (8th Cir. 2008) (claimant diagnosed with fibromyalgia nevertheless demonstrated normal flexion and extension, normal range of motion, normal straight leg raising, no muscle spasm, no muscle weakness or atrophy, essentially normal gait, good strength); Casey v. Astrue, 503 F.3d 687 (8th Cir. 2007) (claimant diagnosed with fibromyalgia nevertheless demonstrated full range of motion, no pain with range of motion of hips, negative straight leg raising, tenderness in low back but stable thoracic spine, relief with steroid injections).

The ALJ also found that plaintiff was not fully credible because her complaints were out of proportion to the objective findings in the record. He noted that she had not had regular treatment with the rheumatologist since November of 2006; that she only saw him once or twice in 2007, and once in 2008; and that she did not require the use of an assistive device, nor did she receive any treatment with an orthopedist or physical therapist for her neck and low back

complaints. The ALJ also noted that she had not received any mental health treatment with a mental health professional. "It is reasonable to assume that if the claimant were experiencing the disabling problems alleged, she would have received more aggressive treatment." [Tr. 14]. It was also the ALJ's conclusion that her complaints and alleged limitations were inconsistent with her daily activities, such as doing laundry, washing dishes, cooking, caring for pets, driving a car, reading, sewing, and going to church weekly. He observed that she testified "that she shops at Wal-Mart, a large store with many people, which is inconsistent with her claim of having panic attacks and anxiety." [Id.].

A review of the record by the Court indicates that there is substantial evidence to support the ALJ's findings regarding plaintiff's credibility. She testified at the hearing regarding debilitating and frequent panic attacks, yet she had only received minimal treatment in the form of anti-depressants for a mental condition. Additionally, while she alleged she could no longer work because of panic attacks, pain, and needing to lie down frequently during the day, there is no medical support or otherwise support in the record for this degree of limitation. Rather, the record indicates that she had worked part-time for the most part, and that she left her last job to move with her daughter to Missouri.

Plaintiff contends that the ALJ erred by failing to properly assess her RFC because he did so without the aid of any medical opinion, failed to properly assess work-related functions, improperly interpreted medical evidence, and failed to provide a logical bridge linking the RFC to the evidence of record.

After careful review, however, the Court finds that the ALJ's decision reflects that he carefully considered plaintiff's course of treatment for fibromyalgia, reviewed all the relevant

9

diagnostic tests, as well as her credibility, and relied on the opinion of the vocational expert. Plaintiff had the burden to come forward with relevant evidence of her restrictions. The Commissioner's regulations state that it is the claimant's responsibility to provide medical evidence to show that he or she is disabled. See 20 C.F.R. §§ 404.1512, 416.912 (2008); Roth v. Shalala, 45 F.3d 279, 282 (8th Cir.1995). Additionally, the Eighth Circuit has recognized that the RFC finding is a determination based upon all the record evidence, not just "medical" evidence. See Pearsall v. Massanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001); Dykes v. Apfel, 223 F.3d 865, 866-67 (8th Cir.2000) (citing 20 C.F.R. § 404.1545; SSR 96-8p at pp. 8-9). The RFC formulation is a part of the medical portion of a disability adjudication. Although it is a medical question, the residual functional capacity findings are not based only on "medical" evidence, i.e., evidence from medical reports or sources. Rather, an ALJ has the duty, at step four, to formulate residual functional capacity based on all the relevant, credible evidence of record. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations). Here, the Court finds that there is substantial evidence to support the ALJ's decision regarding her RFC because he properly considered all the evidence of record in analyzing plaintiff's credibility, and then properly considered all of the evidence of plaintiff's restrictions found to be credible in determining her RFC.

Plaintiff also contends that the ALJ failed to fully develop the record. While the ALJ had a duty to develop the record fully and fairly, it was incumbent on plaintiff to provide evidence. See Onstad v. Shalala, 999 F.2d 1232, 1234 (8th Cir. 1993); 20 C.F.R. § § 404.1512; 416.912

10

(2008). The ALJ is not required to develop further evidence in every case, but only if gaps in the record render him unable to make a decision. However, there is no indication that the ALJ felt unable to make the assessment he did and his conclusion is supported by substantial evidence. In this case, because the evidence in the record provided a sufficient basis for the ALJ's decision, he was not required to obtain additional medical evidence. Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir.1995).

The Court finds, therefore, that there is substantial evidence in the record to support the ALJ's conclusions. He determined that plaintiff had the RFC to perform a range of medium work. Further, the ALJ found plaintiff's complaints not be totally credible because she did respond to medication for her physical symptoms, and there is no evidence to indicate that her claims of depression or anxiety were as debilitating as she claimed. The ALJ noted that plaintiff's course of treatment for fibromyalgia was successful, and that she reported activities that were not indicative of a totally disabling condition. He noted that she only saw the rheumatologist once or twice in 2007 and once in 2008, and that the doctor assessed her as doing well on these occasions. Based on the record as a whole, it cannot be said, therefore, that the ALJ erred in his RFC assessment or erred in finding that plaintiff could sustain employment.

Plaintiff also contends that the ALJ failed to resolve ambiguities regarding her mental impairments, and failed to consider plaintiff's obesity, her arthritis, anxiety, depression, and memory loss as severe impairments.

In this case, the record indicates that plaintiff has not sought any type of psychological treatment for either her depression or allegedly severe panic attacks. She has been prescribed Cymbalta and Wellbutrin by a treating physician for depression. She has had virtually no other

treatment for depression, and has had no therapy, no hospitalizations, and no episodes of decompensation. The fact that she takes antidepressant medication regularly would not, standing alone, establish a disabling impairment. Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir. 1989). Having fully reviewed the record, the Court finds that there is substantial evidence in the record as a whole to support the ALJ's decision regarding the fact that she does not suffer from a severe mental impairment. Plaintiff testified at the hearing that she did not seek mental health treatment beyond medication. In this case, the medical records do not indicate that plaintiff reported symptoms of severe and debilitating panic attacks to her doctor, which she described at the hearing. Additionally, plaintiff's testimony regarding anxiety, depression, and memory loss, without more, do not rise to the level of a severe mental impairment. It is clear that the ALJ also took into consideration plaintiff's mental limitations in determining the RFC. He found that she would be mildly limited for understanding and remembering tasks for sustaining concentration and persistence, social interacting with the general public, and adapting to work place changes. Therefore, the Court finds that there is substantial evidence as a whole to support the ALJ's decision not to find her depression, anxiety, and/or memory loss to be disabling impairments.

By the same token, other than her contention that her obesity and arthritis are severe impairments, there is not medical evidence to support her allegations. The ALJ found, based on the entire medical record, including a number of objective tests, that she had mild restrictions caused by arthritis. The Court finds, after careful review, that the ALJ did not err in finding that her arthritis and obesity did not constitute more than minimal impairments.

Based on the foregoing, the Court finds that there is substantial evidence in the record to support the ALJ's decision that plaintiff does not suffer from a disabling physical or mental

impairment, and that she was not disabled under the Act during the time period in question. Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006). The ALJ's findings that plaintiff was not disabled is supported in the record as a whole.

Accordingly, the decision of the Secretary should be affirmed.

It is hereby

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.


/s/ James C. England
JAMES C. ENGLAND
United States Magistrate Judge

Date: 8/11/11